*Emerald Hills Homeowners' Association, Inc. v. William E. Peters, et ux.*, No. 32, September Term, 2015, Opinion by Adkins, J.

**REAL PROPERTY — CREATION OF EASEMENT — SUBDIVISION PLAT AS EXPRESS EASEMENT:** Generally, an express easement may be created only in the mode and manner prescribed by the recording statutes. However, an express easement, otherwise sufficiently described, can be created by a memorandum that complies with the Statute of Frauds.

Circuit Court for Harford County
Case No.: 12-C-12-000722
Argued: December 4, 2015

IN THE COURT OF APPEALS

OF MARYLAND

No. 32

September Term, 2015

EMERALD HILLS HOMEOWNERS'
ASSOCIATION, INC.

v.

WILLIAM E. PETERS, et ux.

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
  Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: January 27, 2016

Property disputes are a prominent aspect of our state's legal history. From Frederick Calvert, 6th Baron Baltimore, commissioning Charles Mason and Jeremiah Dixon to complete a survey to resolve a colonial boundary dispute, to the United States Supreme Court's adjudication of an interstate water dispute involving the Potomac River in 2003,[1] Maryland has long recognized the significance of the various rights that attach to property ownership. In this case, we are asked to settle a dispute over an easement—one of the most "complex and archaic bod[ies] of American property law." Susan F. French, *Toward a Modern Law of Servitudes: Reweaving the Ancient Strands*, 55 S. Cal. L. Rev. 1261, 1261–62 (1982).

## FACTS AND LEGAL PROCEEDINGS

In 1969, a corporation controlled by Victor Posner acquired a 64-acre parcel of land located near Bel Air, Maryland from William and Margaret Sheppard. This property was next to "Greenridge," a residential community developed by Posner. In the deed of conveyance, the Sheppards retained title to a parcel of a little less than an acre, which the Court of Special Appeals and the parties refer to as "Parcel 765." Parcel 765 does not front on a public road, so the Sheppards reserved a non-exclusive right of way over a 50-foot wide and 100-foot long strip of land (the "Right of Way Parcel"). The Right of Way Parcel provides access to Southview Road, a public street in the Greenridge subdivision.

In 2000, Posner obtained approval from Harford County to develop what is now called "Emerald Hills," a residential community adjacent to the Greenridge subdivision.

---

[1] *See Virginia v. Maryland*, 540 U.S. 56 (2003).

Posner developed Emerald Hills in five phases and recorded a subdivision plat, which he signed, in the land records for each phase.[2]  As part of the development process, Posner constructed Streamview Court, a 50-foot wide public street partially aligned with Southview Road in the adjacent Greenridge subdivision.  Streamview Court ends in a cul-de-sac so its terminus does not line up precisely with the Right of Way Parcel or Parcel 765.  The cul-de-sac, however, shares points of intersection with each parcel.  The parties and Court of Special Appeals refer to this area between the two parcels and the cul-de-sac as the "Triangular Parcel."

Parcel 765, the Right of Way Parcel, and the Triangular Parcel are depicted on one of the five Emerald Hills subdivision plats (the "Emerald Hills Subdivision Plat," "Subdivision Plat," or the "Plat").  Part of the Plat is reproduced below.[3]

---

[2] Earlier phases of the subdivision were known as "Greenbriar Hills," but the name of the development was later changed to Emerald Hills.

[3] The image has been cropped to display the relevant portion and is not to scale.  In addition, we have added identifiers for Parcel 765, the Right of Way Parcel, the Triangular Parcel, and Streamview Court.  We have also enhanced the borders around the Right of Way Parcel.



There are three relevant markings on the Plat: grey shading, forward slashes, and reversed slashes. The Right of Way Parcel and the Triangular Parcel are shaded in a grey tone. A note on the Plat indicates that this shading "denotes pedestrian and emergency vehicle right-of-way & drainage and utility easement." The Triangular Parcel is also marked with forward slashes, "/////." A note states that these slash marks "denote[] ingress & egress easement for access to Parcel 765." Finally, the Right of Way Parcel is marked with reversed slashes, "\\\\\." The third note on the Plat states that the reversed slash marks "denote[] existing ingress and egress easement for Parcel 765 as per [the Sheppard Deed]."[4]

---

[4] Although the slash marks and grey shading are difficult to see in the digitally scanned image reproduced in this opinion, they are quite distinct on the copy of the Plat in the record.

The Plat also designates the Right of Way Parcel and Triangular Parcel as "Passive Open Space" areas.[5] The Plat was recorded in the land records of Harford County in 2000. In 2001, Posner, individually and on behalf of Posner, LLC, executed and recorded a Cross Easement Agreement ("Agreement"). The Agreement recited that Posner was the owner and developer of the Emerald Hills Subdivision and that Posner, LLC was the owner and developer of the Greenridge Subdivision. As a condition of preliminary plan approval for the Emerald Hills Subdivision, the Harford County Department of Planning and Zoning required that Posner and Posner, LLC create reciprocal easements to permit lot owners in both subdivisions to enjoy a common right to use and access the open space areas, including the "Passive Open Space" areas depicted on the Plat. The Cross Easement Agreement grants the owners of the lots in each subdivision reciprocal, but non-exclusive, rights of access and use of the recreational areas and passive open space areas designated on the Plat, as well as on the plats for other phases of the Greenridge and Emerald Hill Subdivisions.

In 2006, title to the passive open spaces, including the Triangular Parcel and the Right of Way Parcel, in the Emerald Hills subdivision, was conveyed to the Emerald Hills Homeowners' Association ("the Association").[6] The deed conveying the property to the

---

[5] The Plat also designates two other parcels, which are not completely depicted on the portion of the Plat reproduced in this opinion, as Passive Open Space areas. These parcels are not relevant to this case.

[6] Posner died in 2002. In 2005, Brenda Nestor, acting as the personal representative of Posner's estate, conveyed the property to Emerald Hills, LLC. Emerald Hills, LLC then conveyed the property to the Association.

4

Association did not contain a metes and bounds or other description of the land conveyed. Instead, the deed referred to the Plat and the other Emerald Hills subdivision plats. Specifically, the deed stated that it passed title to "[a]ll that property referred to as 'Passive Open Space' . . . as shown on [the various Emerald Hills subdivision plats] and recorded among the Land Records of Harford County."

In 2009, Mr. and Mrs. Peters purchased Parcel 765 from William Sheppard's estate "together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of [Mr. and Mrs. Peters]." Mr. and Mrs. Peters then applied for an access permit from Harford County for the installation of a paved driveway on the Triangular Parcel. The County approved the application and Mr. and Mrs. Peters began construction of a driveway on the Triangular Parcel that would enable them to access Streamview Court.

The Association filed suit seeking injunctive relief, compensatory damages, and a declaratory judgment that the Triangular Parcel was not subject to an easement for the benefit of Parcel 765. Mr. and Mrs. Peters filed an answer and a motion to dismiss or, in the alternative, for summary judgment. The Association then filed a cross-motion for summary judgment as to its claim for a declaratory judgment. The Circuit Court granted the Association's motion for summary judgment and declared that the Triangular Parcel was not subject to an easement for the benefit of Parcel 765.

The Court of Special Appeals did not see it that way and it reversed. The intermediate appellate court ruled that the Plat established an express easement over the Triangular Parcel in favor of Parcel 765 and that the Cross Easement Agreement had no

effect on this easement. The Association appealed and we granted its Petition for Writ of Certiorari. The Association presented two questions for review, which we simplify into the following questions:

> (1) Did the subdivision plat for Emerald Hills establish an express easement?
>
> (2) Did the Cross Easement Agreement extinguish any easement attached to Parcel 765?

Because we answer yes as to question one and no as to question two, we shall affirm the judgment of the Court of Special Appeals and remand for further proceedings.

## STANDARD OF REVIEW

Trial courts may resolve matters of law by summary judgment in declaratory judgment actions. *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 642, 796 A.2d 758, 764 (2002). In reviewing a declaratory judgment entered pursuant to a motion for summary judgment, we determine whether it was correct as a matter of law and accord no deference to the trial court's legal conclusions. *Lindsay v. Annapolis Rds. Prop. Owners Ass'n*, 431 Md. 274, 289, 64 A.3d 916, 925 (2013). The interpretation of plats, deeds, easements and covenants has been held to be a question of law. *White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 31, 939 A.2d 165, 175 (2008). Additionally, the "primary consideration in construing the scope of an express easement is the language of the grant." *Chevy Chase Land Co. v. United States*, 355 Md. 110, 143, 733 A.2d 1055, 1073 (1999). In construing the Plat, Cross-Easement Agreement, and other relevant documents in this case, we must "ascertain and give effect to the intention" of the parties. *Miller v. Kirkpatrick*, 377 Md. 335, 351, 833 A.2d 536, 545 (2003).

6

## I. Did The Subdivision Plat For Emerald Hills Establish An Express Easement?

An easement is a "non-possessory interest in the real property of another that can arise either by express grant or implication." *Clickner v. Magothy River Ass'n*, 424 Md. 253, 268, 35 A.3d 464, 474 (2012). Because there is no deed granting an easement to Mr. and Mrs. Peters or their predecessors in title, the focus of the parties' dispute in this case is whether the subdivision plat for Emerald Hills established an express easement in favor of Parcel 765. The Association insists that a subdivision plat cannot create an express easement for a property owner not part of the subdivision under Maryland law. The Association asserts that "[i]f the Subdivision Plat is to be judicially interpreted as a conveying instrument, then it should comply with the requirements of other conveying instruments such as deeds, deeds of trust, and leases."

This contention overlooks well-settled Maryland law. True, we have stated that express easements "may be created only 'in the mode and manner prescribed by the recording statutes.'" *Kobrine, L.L.C. v. Metzger*, 380 Md. 620, 636, 846 A.2d 403, 412 (2004) (quoting *Brehm v. Richards*, 152 Md. 126, 132, 136 A. 618, 620 (1927)).[7] But as

---

[7] The Maryland recording statute applicable to deeds provides:

> Any deed containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, if executed, acknowledged, and, where required, recorded.

Md. Code (1974, 2013 Repl. Vol.), Real Property Article ("RP") § 4-101(a)(1).

the Court of Special Appeals correctly recognized, this is simply a "general rule." *Peters v. Emerald Hills Homeowners' Ass'n,* 221 Md. App. 338, 345, 109 A.3d 131, 136 (2015).

In *Dubrowin v. Schremp*, we limited to deeds the requirement that a right of way over land can be created only in the mode and manner prescribed by the recording statutes and held that a right of way, **otherwise sufficiently described**, could be created by a memorandum that complied with the Statute of Frauds. 248 Md. 166, 171, 235 A.2d 722, 724–25 (1967).[8] The Court reaffirmed this principle in *Kobrine* when it recognized that a plat could create an easement by express grant. 380 Md. at 636–37, 846 A.2d at 412–13 (stating that "a right of way, otherwise sufficiently described, [can] validly be created" by something other than a deed if it "complie[s] with the Statute of Frauds, *i.e.,* a writing signed by the party to be charged or that party's authorized agent") (citing *Dubrowin*, 248 Md. at 171, 235 A.2d at 724–25).

The *Kobrine* Court, however, determined that the plat at issue failed to satisfy the requirements necessary to establish an express easement because it did not comply with Maryland's Statute of Frauds and did not sufficiently describe the right of way. Viewing the legend on the plat as the "ultimate source of any easement," the Court concluded that

---

[8] Maryland's Statute of Frauds stipulates that:

> No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it, or his agent lawfully authorized by writing, or by act and operation of law.

RP § 5-103.

the plat was insufficient to create an express easement for three reasons: (1) neither the name nor the signature of the grantor appeared anywhere on the plat; (2) the plat failed to identify the lot owners whom the grantor intended to benefit; and (3) the nature of the interest the grantor intended to convey was "entirely unclear." *Id.* We agree with the Court of Special Appeals that the Plat does not suffer from any of the *Kobrine* defects.

The Association asserts that the circumstances underlying *Dubrowin* are factually distinguishable and that *Dubrowin*'s holding that a right of way, otherwise sufficiently described, could be created by a memorandum that complied with the Statute of Frauds "cannot be separated from the material facts in that case." This effort to cabin the *Dubrowin* holding is untenable. Although *Dubrowin* did not involve a plat, *Kobrine* did, and we applied the *Dubrowin* rule without reservation. So, our next steps are to examine this particular plat in light of *Dubrowin* and *Kobrine* to determine if it complies with the Statute of Frauds and sufficiently describes the right of way.

### Compliance with Statute of Frauds

Unlike the plat in *Kobrine* where neither the name nor the signature of the grantor appeared, Victor Posner's name and signature appear twice on the Emerald Hills Subdivision Plat. Mr. and Mrs. Peters rely on these signatures in asserting that the Plat satisfies the Statute of Frauds. The Association counters that "Posner did not sign the Subdivision Plat for the purpose of granting an easement to [Mr. and Mrs. Peters] or their predecessors." The Association claims that the "signature block clearly limited the purpose for which roads and open spaces were shown on the Subdivision Plat" and that Posner

9

"grant[ed] only one easement in this signature block." It points to the following language in the signature block for support:

> **Unless otherwise provided** on this plat, the streets, roads, open spaces and public sites shown hereon, and the mention thereof in deeds are for the purpose of description only and the same are not intended to be dedicated to public use.
>
> * * *
>
> The owner hereby grants to Harford County, Maryland, an easement for the construction, maintenance, repair, and replacement of water, sewer, and storm drainage lines within the drainage and utility easements and road improvement rights of way as shown on the plat.

(Emphasis added.)

In arguing that "[n]o grants of any kind are made by Mr. Posner as a result of his signing the Subdivision Plat other than the grant of an easement to Harford County," the Association ignores crucial language in the signature block and erroneously examines this language in isolation from the rest of the Plat. The opening phrase "[u]nless otherwise provided on this plat" in the signature block qualifies the limiting language that follows. The markings on the Triangular Parcel and Right of Way Parcel, as well as the notes explaining these markings are definite and clear, and thus fall within the "unless otherwise provided" classification. We reject the Association's argument that these designations are simply for the "purpose of description."

The Association also contends that there must be evidence of a contract or agreement in order for Maryland's Statute of Frauds to apply. The Association states that there is "no evidence in the record of any agreement, contract, or promise between [the

10

parties] . . . regarding the disputed Triangular area" and thus, the Plat cannot satisfy the Statute of Frauds because a prerequisite for the statute's applicability has not been satisfied. In support of its claim, the Association directs the Court to Md. Code (1973, 2013 Repl. Vol.), § 5-901 of the Courts and Judicial Proceedings Article ("CJP")[9] and *MEMC Electronic Materials v. BP Solar International*, 196 Md. App. 318, 340, 9 A.3d 508, 521 (2010).

The Association misunderstands CJP § 5-901. This section, by its plain terms, simply sets out the circumstances in which contracts must be in writing to be enforceable. Writing for the Court of Special Appeals, Judge Kehoe aptly noted that the issue here is "not whether the Association is contractually obligated to convey an easement over the Triangular Parcel" to Mr. and Mrs. Peters; rather "the relevant question is whether the Plat had the legal effect of subjecting the Triangular Parcel to an easement for the benefit of Parcel 765." To answer that question, we look to Maryland's Statute of Frauds, Md. Code

---

[9] CJP § 5-901 states:

> Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
> (1) To charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person;
> (2) To charge any person on any agreement made on consideration of marriage; or
> (3) On any agreement that is not to be performed within 1 year from the making of the agreement.

(1974, 2013 Repl. Vol.), § 5-103 of the Real Property Article ("RP"), which the Plat satisfies.

Relying on *Bruce v. Dyer*, 309 Md. 421, 524 A.2d 777 (1987), the Association claims that the Plat cannot satisfy the requirements of RP § 5-103 because "[w]ords such as 'grant,' 'convey,' 'transfer,' 'assign,' or their equivalent evidencing a present conveyance of an interest in realty are absent from the Subdivision Plat." The issue in *Bruce* was whether the parties' tenancy by the entireties was severed by the terms of their marital separation agreement, which called for the parties to list the marital residence for sale and to divide any proceeds. 309 Md. at 424–25, 524 A.2d at 778–79. In concluding that the separation agreement did not sever the estate, the Court observed that, at common law, spouses who desired to sever a tenancy by the entirety could do so only through a straw deed and that the General Assembly modified the common law rule by enacting what is now codified as RP § 4-108(b).[10] *Bruce*, 309 Md. at 429–31, 524 A.2d at 781–82. The Court explained that although the statute had removed the need for a straw conveyance, the

---

[10] RP § 4-108(b) provides:

> Any interest in property held by a husband and wife in tenancy by the entirety may be granted, (1) by both acting jointly, to themselves, to either of them, individually, or to themselves and any other person, in joint tenancy or tenancy in common; (2) by both acting jointly, to either husband or wife and any other person in joint tenancy or tenancy in common; and (3) by either acting individually to the other in tenancy in severalty, without the use of a straw man as an intermediate grantee-grantor. These grants, regardless of when made, are ratified, confirmed, and declared valid as having created the type of ownership that the grant purports to grant.

12

statute had not changed the requirement that, absent divorce, a tenancy by the entirety could be severed only by deed from both spouses. *Id.* at 431–32, 524 A.2d at 782–83. The Court of Special Appeals correctly recognized that the *Bruce* holding turned largely on the Court's interpretation of RP § 4-108(b) as requiring a deed to sever a tenancy by the entirety, and was not applicable to other real property interests. *Emerald Hills Homeowners' Ass'n,* 221 Md. App. at 350, 109 A.3d at 139. Accordingly, we reject the Association's argument that a plat cannot satisfy RP § 5-103 unless the "[w]ords such as 'grant,' 'convey,' 'transfer,' 'assign,' or their equivalent evidencing a present conveyance of an interest in realty" appear therein.

## Sufficient Description of the Right of Way

The Association posits that the Plat suffers from the same defect as in *Kobrine* in its failure to indicate which lot owners were intended to benefit from the easement. Although the legend does not name a specific individual as the grantee, the legend unambiguously identifies Parcel 765 as the dominant estate and the Triangular Parcel as the servient estate. Interpreting *Kobrine*, we consider this difference material. Our concern there was lack of clarity as to the dominant estate:

> [A]lthough the servient lot is identified, the plat does not indicate *which* lot owners are intended to be benefitted—only those owning lots in Section Two or also those owning lots in Section One—thereby making both the grantees and a clear description of the dominant property impossible to identify from just the face of the document[.]

13

380 Md. at 636, 846 A.2d at 412–13 (emphasis in original). With its clear identification of the dominant and servient parcels, the Emerald Hills Subdivision Plat does not suffer from that deficiency.

The Association further maintains that the nature of the interest Posner intended to convey is unclear because the Plat "does not describe the extent and nature of the access easement proposed or specify the burdens attached to such easement." In particular it complains that the "Parcel 765 Legend does not describe whether ingress was for pedestrians exclusively, traffic exclusively, or both." The legend, however, need not describe the nature of an easement to that degree of specificity for there to be a sufficient description of the right of way.

In *Kobrine*, the legend on the subdivision plat merely stated "Area Reserved For The Use Of Lot Owners." 380 Md. at 636, 846 A.2d at 412. The Circuit Court found an express recreational easement based on this language, but this Court vacated the trial court's judgment because the nature of the interest intended to be conveyed was "entirely unclear." *Id.* at 635–37, 846 A.2d at 411–13. Indeed, the *Kobrine* Court was forced to ask "*what* use may the dominant lot owners make of the servient lot?" *Id.* at 636–37, 846 A.2d at 413 (emphasis in original). Troubled by this "uncertaint[y]," the Court held that the plat did not create an express easement. *Id.* at 637–38, 846 A.2d at 413–14. In contrast to there being "no way to tell . . . what kind of easement was being conveyed" by the plat in *Kobrine*, 380 Md. at 638, 846 A.2d at 414, the legend here describes the kind of easement being conveyed—an "ingress & egress easement." Thus, the legend's notation that the interest intended to be conveyed is an access easement constitutes a sufficient description

14

of the nature of the right of way. As the owners of an "ingress & egress easement for access to Parcel 765," Mr. and Mrs. Peters can make reasonable use of this easement. *See Mahoney v. Devonshire*, 86 Md. App. 624, 587 A.2d 1146 (1991) (prescriptive easement for road included right to improve road by grading and asphalting); 7 Thompson on Real Property § 60.04(a), at 527 (Thomas 2d ed. 2006) ("The owner of easement rights can make reasonable use of them."). The installation of a mountable curb and driveway is reasonable under the language of the easement grant in the Plat.

Because a deed is not required to create an easement and the Plat satisfies Maryland's Statute of Frauds as well as sufficiently describes the easement, we shall affirm the Court of Special Appeals' holding that the Plat established an access easement over the Triangular Parcel for the benefit of Parcel 765. We turn now to the parties' dispute over whether the 2001 Cross Easement Agreement terminated the easement.

## II. Did The Cross Easement Agreement Extinguish The Easement Attached To Parcel 765?

Generally, the owner of a servient estate cannot unilaterally extinguish an express easement. *See Miller*, 377 Md. at 350, 833 A.2d at 545 (concluding that the owners of a servient estate "may not unilaterally modify or reduce [a] right-of-way in a manner or extent that is inconsistent with the intention of the parties as gleaned from the language of the deed granting the right-of-way"); *Brooks v. Voigt*, 224 Md. 47, 50–51, 166 A.2d 737, 739 (1961) (holding that an easement created by express grant cannot be narrowed unilaterally by the servient tenement); *see also Maddran v. Mullendore*, 206 Md. 291, 297, 111 A.2d 608, 610 (1955) ("It is axiomatic that the owner of a servient tenement cannot

15

close or obstruct the easement against those who are entitled to its use in such manner as to prevent or interfere with their reasonable enjoyment."); 7 Thompson on Real Property § 60.08(b)(2), at 561 (Thomas 2d ed. 2006) ("Any easement, no matter how created, may terminate by the agreement of both the dominant and servient parties, through a formal release."). Here, it is undisputed that neither Mr. and Mrs. Peters nor their predecessors in interest of the dominant estate were signatories to the Cross Easement Agreement. Rather, Posner, individually, and on behalf of Posner, LLC, executed the Cross Easement Agreement for the benefit of third party property owners. Because Mr. and Mrs. Peters were not parties to the Cross-Easement Agreement, nothing contained therein could interfere with their express easement. *See Miller*, 377 Md. at 350, 833 A.2d at 545; *Brooks*, 224 Md. at 50–51, 166 A.2d at 739.

### III.  Conclusion

*Dubrowin* and *Kobrine* make clear that a plat can establish an express easement in certain circumstances and we have no difficulty holding that the Emerald Hills Subdivision Plat established an express easement over the Triangular Parcel for the benefit of Parcel 765. In addition, we hold that the Cross Easement Agreement did not extinguish this access easement.

Finally, the access easement does not impose any particular hardship on the Association because it took title to the property with constructive knowledge of the easement. It is well-settled that reference to a plat in a deed incorporates that plat as part of the deed. *Lindsay*, 431 Md. at 291, 64 A.3d at 926 ("Under the common law, a reference to a plat in a deed incorporates generally that plat as part of the deed."); *see Boucher v.*

16

*Boyer*, 301 Md. 679, 689, 484 A.2d 630, 636 (1984) (recognizing "the common law rule that a deed reference to a plat incorporates that plat as part of the deed."). The 2006 deed granting property to the Association expressly referenced the Emerald Hills Subdivision Plat and the Plat's legend denoting "ingress & egress easement for access to Parcel 765" is unobscured. Moreover, Maryland statutory law provides that unless "a contrary intention appears by express terms or is necessarily implied . . . every grant or reservation of an easement passes or reserves an easement in perpetuity." RP § 4-105. In light of the Association's taking title to the property with constructive knowledge of the easement over the Triangular Parcel for the benefit of Parcel 765, we agree with Mr. and Mrs. Peters that the easement works no particular hardship on the Association.

For these reasons we affirm the intermediate appellate court's judgment and remand this case so that a declaratory judgment consistent with this opinion can be entered.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITIONER.**